IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BARBARA MCKNIGHT, individually and on behalf of all other persons similarly situated similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HONEWELL SAFETY PRODUCTS USA, INC., HONEWELL INTERNATIONAL, INC., DAVID M. COTE, CARL JOHNSON, AND MARK R. JAMES, in their official and individual capacities,<br><br>Defendants. | CIVIL ACTION NO.<br>1:16-CV-00132-ML-PAS |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' OBJECTIONS
TO REPORT AND RECOMMENDATION CONCERNING
CONDITIONAL CERTIFICATION**

**INTRODUCTION**

Plaintiffs in this case, two individual employees of Honeywell's Safety and Productivity Solutions group in Rhode Island, seek a nationwide collective under the Fair Labor Standards Act ("FLSA"), alleging that they are similarly situated to hundreds of other Buyers, Senior Buyers, Buyer Planners, and others in all of Honeywell's 14 business units. The question of collective certification originally came before the Court on Defendants' motion to strike the class and collective allegations. In the Report and Recommendation granting in part and denying in part Defendants' motion, Magistrate Judge Sullivan held that "[t]here is no question that Defendants' affidavits have raised a serious question whether Plaintiffs can clear the first bar of demonstrating that they are 'similarly situated' with the rest of the alleged FLSA class, however leniently that bar may be set." Docket No. 20 at 5. That decision nonetheless denied the motion

to strike in order to hold open the possibility that Plaintiff McKnight's affidavit, when "coupled with [Plaintiffs'] plan to pursue discovery to enhance the factual showing of similarity," might support conditional certification. *Id.*

Plaintiffs chose not to heed that suggestion, electing instead to forego most discovery and simply to renew the bare-bones motion that they previously had decided to hold in abeyance while searching for more facts to rebut the ten declarations Defendants submitted with their motion to strike. The renewed motion relied for its facts on declarations from the two named Plaintiffs; a collection of Honeywell policy documents; and the fact that Honeywell classifies other Buyers as exempt from the FLSA's requirements. After oral argument, Magistrate Judge Sullivan issued a detailed, 21-page Report and Recommendation denying conditional certification without prejudice to renewal. The Report and Recommendation held that Plaintiffs offered no factual basis for the claims in their declarations about Honeywell's practices outside Rhode Island, that the policy documents on which Plaintiffs rely do not impose the limitations on Buyer discretion that Plaintiffs claim, and that on the record taken as a whole, the Plaintiffs have failed to make even a modest showing that they are similarly situated to the vast collective they propose. That thorough and careful opinion correctly analyzes the record and applies the relevant law. Plaintiffs' Objections should be overruled.

**RELEVANT FACTUAL BACKGROUND**

 **A. Honeywell's Fourteen Business Units**

Honeywell groups its extraordinary range of products and services into a Corporate division and four strategic business groups: Safety and Productivity Solutions ("SPS"), Home and Building Technologies ("HBT"), Aerospace, and Performance Materials & Technologies

("PMT").[1]  Within SPS, Ms. McKnight's and Ms. Anderson's group, there are two separate business units;[2] HBT has three;[3] Aerospace, four;[4] and PMT, five.[5]  Over the relevant time period, Honeywell also has made several acquisitions of businesses that had their own procurement staffs, and that have subsequently been integrated into Honeywell's procurement function.[6]

Each of those units within SPS, HBT, Aerospace, and PMT works with Buyers, though they are not always called Buyers.  The "similar job title[s]" to which the Complaint refers, Complaint ¶34, include at least Buyers, Buyer/Planners, Lead Buyers, Senior Buyers, Senior Buyer/Planners, and Buyer Category Specialists.  Pascoe Decl. ¶5.[7]

Buyers – whatever their specific title[8] – are also divided into "direct" and "indirect" groups.  Direct Buyers purchase raw materials and parts that are incorporated directly into the

---

[1] SPS and HBT were formerly combined into a unit called Honeywell Automation and Control Solutions ("ACS"), as described in Defendants' Motion to Strike (Dkt. No. 12).

[2] Sensing and Productivity Solutions (formerly two business units, Scanning and Mobility and Sensing and Control) and Honeywell Industrial Safety.  Declaration of Joshua Pascoe (Dkt. 12-10) ¶2.

[3] Those units are currently named Honeywell Security and Fire (formerly Honeywell Security Group and Honeywell Fire Safety); Honeywell Building Solutions and Distribution; and Environmental and Energy Solutions.  Declaration of Joshua Pascoe, Dkt. 12-10, ¶2.

[4] Commercial OE (Original Equipment); Commercial Aftermarket; Defense and Space; and Transportation Systems.  Pascoe Decl. ¶3.

[5] Honeywell UOP (formerly Universal Oil Products); Honeywell Process Solutions; Flourine Products; Resins & Chemicals; and Specialty Products.  Pascoe Decl. ¶4.

[6] Subsequent to the filing of the Declaration of Joshua Pascoe, various business groups within Honeywell have undergone further integrations and restructurings affecting both the organization and total number of business units within Honeywell.  Accordingly, at the time of this filing, there currently are more than fourteen separate business units within Honeywell.

[7] Ms. McKnight's categorization of buyers as "Buyer, Buyer I, Buyer II, and Senior Buyer," Complaint ¶34, is inaccurate.  *Id*.

[8] For ease of reference, we use the term "Buyer" hereafter to include the various job titles that perform related procurement services.

- 3 -

manufacture of Honeywell's products, while indirect Buyers purchase ancillary products and services necessary to the maintenance of Honeywell's facilities, such as office supplies and lawn mowing around the plant. Declaration of Robert Chapman (Dkt. 12-4) ¶4.

### B. Many Buyers Report Different Duties and Degrees of Responsibility than Ms. McKnight and Ms. Anderson.[9]

Ms. McKnight and Ms. Anderson briefly declare in their affidavits that their jobs required "little skill," involved exclusively "data entry and other routine clerical functions," and required no "exercise [of] independent judgment." McKnight Decl. ¶¶5-7; Anderson Decl. ¶¶5-7. Others in the proposed collective report a very different experience.

In Jonathan Havlik's group supporting Honeywell Security & Fire, for example, Buyers are expected to source suppliers, negotiate with those suppliers, and create and place purchase orders. Declaration of Jonathan Havlik (Dkt. 12-5) ¶2. The discretion of these Buyers, though, is limited as they are not permitted to enter into contracts in excess of $25,000. *Id.* ¶3. Purchase orders larger than that threshold are the responsibility of Buyer Category Specialists. *Id.* ¶5. But they all have the authority and autonomy to select and negotiate with suppliers in ways that lead to savings for the group. *Id.* ¶6. Those savings are tracked by the group and play a role in the performance evaluations of both jobs. *Id.* Robert Chapman, in Industrial Safety, drew a distinction between direct and indirect Buyers; although both are expect to use independent judgment to achieve savings for the group and have substantial discretion as to contracts under $10,000, the indirect Buyers exercise more discretion because they are not constrained by the need to purchase a particular product, and so have greater leverage with suppliers. Declaration of Robert Chapman (Dkt. 12-4) ¶¶3, 9-11.

---

[9] A fuller review of the declarations in the record is provided in the memorandum supporting Defendants' Motion to Strike, Docket No. 12-1. To avoid repetition we merely summarize that evidence here.

Greg Allen reported even more variation in the discretion and independent judgment exercised by Buyers he oversees, and formerly oversaw, in the Sensing and Productivity Solutions business unit; he testified that the exercise of that authority varies depending upon the skill set and personality of each individual, as well as the location in which he or she works. Declaration of Greg Allen (Dkt. 12-2) ¶7. His experience with the direct Buyers whom he formerly managed was more uniform; they regularly exercised significant independent judgment in overseeing, among other things, product forecasts, inventory, lead time, product requirements, and quality control. *Id.* ¶2. Unlike most other Buyers, they were not limited with respect to discretion or dollar authority in any way. *Id.* ¶3. These Buyers regularly executed and oversaw purchase orders in excess of $1,000,000. *Id.*

In Aerospace, Buyers research, select, and engage suppliers, solicit bids from suppliers, negotiate contracts with suppliers, including both the purchase price and other terms of the deal, and draft the purchase order for the contracts. Declaration of Dana Barton (Dkt. 12-3) ¶3. Aerospace Buyers also regularly develop contract pricing by running online auctions. *Id.* Those auctions require Buyers to determine the specific product and quantity to put up for auction that will realize the most savings; research, select, and engage suppliers; and invite those suppliers to bid on the auction at terms that will save money. *Id.* Those obligations are directly tied to both merit increases for those who succeed, *id*. ¶4, and discipline and discharge for those who treat the Buyer job as a clerical position, primarily processing purchase orders in a routine manner, *id*. ¶5. Thus, the approach to the Buyer job that Ms. McKnight and Ms. Anderson claim was an express requirement resulted in termination for a Buyer in Aerospace.

Buyers Thang Ly and Audrey Koczan, who work in the Aerospace group, confirm that the exercise of discretion and independent judgment are essential to their position. Both make

decisions on their own about the suppliers with whom to negotiate, the terms and pricing they will offer, the negotiations they conduct in pursuit of savings, and the many considerations, both tangible and intangible, that go into a decision to make an award to a supplier. Declaration of Audrey Koczan (Dkt. 12-7) ¶¶5-6; Declaration of Thang Ly (Dkt. 12-8) ¶6. In one instance, for example, Ms. Koczan implemented a change to a supplier over the wishes of the Honeywell employees on whose behalf she was negotiating, and in another was able to negotiate a reduction in the minimum order to achieve savings for Honeywell. Koczan Decl. ¶¶8-9. Buyers in Performance Materials and Technologies have similarly broad and discretionary responsibilities. Declaration of Stacy Marionneaux (Dkt. 12-9) ¶¶5-7.

## ARGUMENT

For the sake of clarity, we follow the outline of Plaintiffs' Objections and respond to those arguments point by point.

    **A.**    **"Specific Issues With Findings of Fact and Law." (Objections at pp. 7-14).**

    1.    <u>Plaintiffs' Lack of Personal Knowledge (Objections at 7-8)</u>. As Magistrate Judge Sullivan correctly explained in the Report and Recommendation, Dkt. No. 49 ("R&R"), even first-stage certification of an FLSA collective requires "some evidence of a common policy or practice potentially imposed on all members of the proposed collective that potentially violates FLSA." R&R at 12 (citing *Brown v. Barnes & Noble, Inc.*, 2017 WL 1653576, at *4 (S.D.N.Y. May 2, 2017)). The plaintiffs themselves could not make that showing from their own knowledge, as Judge Sullivan determined, because their declarations offered no evidence beyond their own experience in their Rhode Island office. Plaintiffs now insist that their affidavits did describe broader knowledge, but those declarations simply made blanket statements about practices across Honeywell without any evidence that those statements were based on personal knowledge. Ms. Anderson says, for example, that "buyers have little if any discretion in the

- 6 -

entire procurement process." Anderson Decl. ¶9.  How does she know, though, what the practices are in the Aerospace or PMT divisions, where she has never worked, and where Buyers are supervised by individuals with whom Ms. Anderson has no relationship?  Nothing in her declaration offers any basis to answer that question.

Similarly, Plaintiffs repeatedly insist that Ms. Anderson knows what practices prevail in Ohio, California, Mexico, and Brazil, because their supervisor, Lynn Sylvain, supervises workers in those jurisdictions as well.[10]  But as evidence Plaintiffs cite only Paragraph 13 of Ms. Anderson's declaration, which says literally nothing to suggest that she has knowledge of practices in Ohio or California.  She mentions instructions about achieving savings that she received in "staff meetings," but offers no description of the attendees at those meetings.

Plaintiffs' general assertions, without any explanation of the basis of their knowledge, are especially suspect because of the substantial other evidence in the record showing that, even accepting their own descriptions of their jobs at face value, their experience was not shared by others.  Supervisors in other divisions uniformly insisted that the buyers they supervise are expected to, and do, exercise discretion and judgment.  Greg Allen testified, for example, that his buyers (who are in the same general business division as Ms. McKnight and Ms. Anderson) are "responsible for overseeing, among other things, product forecasts, product inventory, product lead time, product requirements, and product quality control," and that "[t]here was ***no limit on the discretion or authority of these direct Buyers*** as long as purchases were generally in line with top-level product forecasts."  Allen Decl. (Dkt. 12-2) ¶¶2-3.  Honeywell presented declarations not only from supervisors but also from other buyers, who also attested to the scope

---

[10] As a preliminary matter, the references to Mexico and Brazil are irrelevant, because the FLSA extends only to U.S. employees. *See* 29 U.S.C. §213(f) (minimum wage, overtime, and other requirements "shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country [or outside of certain specified territories]").

of judgment and discretion in their jobs. In Aerospace, a buyer was fired for not exercising discretion and judgment – for doing only the minimal clerical work that Ms. McKnight and Ms. Anderson say made up their entire jobs. Barton Decl. (Dkt. 12-3) ¶5.

Magistrate Judge Sullivan accurately described the generalized claims from Ms. McKnight and Ms. Anderson as "*ipse dixit* asseverations," R&R at 16, and with no basis to conclude that they know the prevailing practices elsewhere, the affidavits do not contribute to a finding that similarly situated employees exist.

    2.    <u>Corporate-wide procurement policies (Objections at 8)</u>. Throughout their Objections, Plaintiffs rely heavily on a handful of Honeywell policies, predominantly for the notion that all procurement decisions are subject to approval. As the R&R notes, however, that argument ignores the U.S. Department of Labor's regulations, which specifically note that procurement employees may be administratively exempt even if they must obtain approvals. R&R at 20 (citing 29 C.F.R. §541.03(f)). More generally, the administrative exemption does not require that an individual, to be exempt, must be able to make final, binding decisions. As the regulations explain:

> employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. ***The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action***. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. §541.202(c) (emphasis added).

Further, the policies to which Plaintiffs repeatedly refer, Exhibit E to the Objections, simply do not say what Plaintiffs claim. The first policy merely says, in relevant part, that "completed negotiations must be confirmed by contract or purchase order signed by authorized

personnel," without identifying those persons.  Objections, Ex. E, at 2.  The second document, apparently slides from a presentation, similarly says that decisions should be made by "the appropriate level of management," but describes a process of delegation and re-delegation of authority that includes no specifics.  *Id*. at 4-8; see, e.g., *id*. at 8 ("Contract approval follows the [Purchase Order] approval hierarchy *defined for each purchasing org*") (emphasis added).  The third policy repeats these generalities and notes that anyone with authority to take some action may delegate authority as desired.  *Id*. at 10, ¶4.2.1.  The fourth policy, *id*. at 13-15, merely requires that all purchases be made by purchase order, and approved in accordance with the earlier policy.  The fifth and final policy, *id*. at 16-18, requires that purchases be documented and that that documentation be retained.

      None of these documents says or implies that Buyers like Ms. McKnight or Ms. Anderson lack authority to make binding decisions (much less that they lack power to make persuasive recommendations, as the regulations describe).  In fact, because they are so general – permitting wide delegation of authority without any limitations – the policies actually present evidence that individual business units may grant or withhold discretion to approve purchases as they choose.  That is consistent with Defendant's declarations, which describe business units where Buyers have approval authority over purchases ranging from $10,000 in some cases to more than $6 million in others.  The policies before the Court, taken together, merely say that appropriate approvals must be obtained, without establishing any rules at all about the level of the organization at which procurement decisions must be made.  The policy documents accordingly do not at all suggest that any other Buyer's discretion must be as limited as Ms. McKnight and Ms. Anderson describe about their own jobs.

3. <u>Nothing to infer greater personal knowledge (Objections at 8-9)</u>. Plaintiffs here repeat their reliance on the corporate policies and Ms. Anderson's general reference to "staff meetings," both discussed above.

4. <u>Declarations from other buyers (Objections at 9)</u>. The R&R correctly considered the declarations submitted by Honeywell. See, e.g., *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 246 (D.R.I. 1999) (Lisi, J.) (requiring the Court at the notice stage to consider "'the pleadings and any affidavits that have been submitted' during the initial phases of litigation"); *Roberts v. TJX Cos., Inc.*, 2017 WL 1217114, at *6 (D. Mass. Mar. 31, 2017).[11] Plaintiffs here respond only that the Court should focus on whether there are similarly situated employees, rather than whether there has been a violation of law. Objections at 9. That is correct, but the R&R did not focus incorrectly on whether there was a violation; rather, Magistrate Judge Sullivan searched the record in vain for any evidence that McKnight and Anderson, with their description of clerical, routine work, were similarly situated to other procurement personnel. There was no such evidence.

5. <u>Lack of job descriptions (Objections at 9-10)</u>. Honeywell does not use job descriptions. The lack of such documents does not alone preclude certification, and the R&R did not so hold. But without such documents, Plaintiffs must present other evidence to sustain their burden – however modest – that they are similarly situated to other employees. Here, they presented only their own declarations, which as described above offer no basis to conclude that they have the knowledge they claim.

---

[11] *See also Holley v. Erickson Living*, 2012 WL 1835738, at *4 n.4 (E.D. Pa. May 21, 2012) ("At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims. . . . The Court does not, however, review Plaintiff's evidence in a vacuum. It reviews Plaintiff's evidence in light of the evidence submitted by Defendants.").

6. <u>Cigna insurance form (Objections at 10)</u>.  The insurance form describing functions of Plaintiffs' position was not prepared by Honeywell, and so is of limited value.  In any case, however, as the R&R recognizes, the form describes Plaintiffs' job as including both "repetitive and continuous activity" and "control, direction, or planning an activity" while "mak[ing] generalizations, judgements, or decisions based on subjective or objective criteria." *See* R&R at 4.  The form therefore offers no basis to conclude that there are other buyers similarly situated to Ms. McKnight and Ms. Anderson.

7. <u>Management approval (Objections at 10-11)</u>.  Plaintiffs merely repeat their reliance on their declarations and the procurement policies, discussed in Sections 1 and 2 above.

8. <u>"Need for management approval varies widely"</u> (Objections at 11).  Plaintiffs simply assert, without explanation, that this finding is "clearly erroneous."  In fact the record does describe widely varying degrees of management approval, as the R&R summarizes at pages 6-8.

9. <u>*Brown v. Barnes & Noble* (Objections at 11)</u>.  Plaintiffs attempt to distinguish *Brown* (Dkt. 45-1) by arguing that they have offered more evidence supporting certification than did the plaintiffs in *Brown*.  But, as *Brown* notes, plaintiffs there submitted six declarations from eight plaintiffs who worked for the defendant in Illinois, Connecticut, Arizona, Rhode Island, North Carolina, and South Carolina, in contrast to the declarations here just from Ms. McKnight and Ms. Anderson, who worked in the same office in Rhode Island.  Dkt. 45-1 at 4.  The *Brown* plaintiffs also submitted evidence that Barnes & Noble had reclassified the position to non-exempt, *id.* at 10-11.  And while they did not submit copies of the allegedly common policies, they did offer a common job description that indisputably applied to all employees in the

proposed collective. *See id.* at 2-3, 11-12. The case thus offers an apt comparison to this one; and the court there denied conditional certification.

10. <u>Sworn statements from other employees (Objections at 12-14)</u>. Plaintiffs here simply mischaracterize Honeywell's position. Honeywell does not argue that the Plaintiffs must show here that the exempt classification violated the law, Objections at 12, nor that certification should be defeated because "individual issues may dominate," *id.* at 12-14. The Court need not consider the merits at all. But Plaintiffs must show that there are *other similarly-situated employees* who were subject to a *common policy* that may have *violated the law*, and they did not do that. They submitted their own declarations, testifying about their own jobs but with no competent testimony about anyone else's; corporate policies that merely say appropriate authority is required (for procurement as for many other things), without specifying any particular level of approval for particular tasks and in fact permitting wide delegation of approval authority; and a form prepared by a third party that offers inconclusive information about the degree of independent judgment that the Buyer job requires. They have not met their burden, as Magistrate Judge Sullivan's detailed and thoughtful opinion properly concludes.

**B.     "Modest Showing" (Objections at 14-22).**

Courts have regularly described the plaintiffs' burden at the first stage of FLSA certification as requiring "'a modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).[12] Here, Plaintiffs cannot – at least cannot currently – meet that

---

[12] *See also Thiessen v. General Electric Capital Corp.*, 267 F. 3d 1095, 1102 (10th Cir. 2001) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)); *Garrison v. ConAgra Packaged Foods, LLC*, 2014 WL 1247649, at *2 (E.D. Ark. Mar. 27, 2013) (requiring "a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law"); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill.

burden, because there is no basis to conclude that a centralized policy decision was made to misclassify Buyers (and associated job titles) as exempt even though they would not perform exempt duties. The overwhelming evidence before the Court suggests that Buyers typically do perform primarily exempt duties – evidence that comes from the Buyers themselves (declarations of Thang Ly, Audrey Koczan, and Toni Higgins, Dkt. 12-6 to 12-8) and from their supervisors both in Plaintiffs' business unit (the declarations of Lynn Sylvain (Dkt. 12-11) and Robert Chapman (Dkt. 12-4)) and in other business units (the declarations of Jonathan Havlik, Dana Barton, Greg Allen, and Stacy Marionneaux (Dkt. 12-2, 12-3, 12-5, 12-9)). Accepting as true, for these purposes, Plaintiffs' allegations that they have "the primary duty of submitting orders to vendors for certain products listed in purchase orders they receive" and other "non-exempt duties . . . including data entry and other routine clerical functions," Complaint ¶¶23, 30, and that they "did not exercise a meaningful degree of independent discretion," *id.* ¶31, theirs is not the universal experience, and indeed seems to be the exception to the rule.[13]

The list of "facts" that Plaintiffs present (Objections at 18-21) essentially just repeat the claims of their own declarations. As explained above, and as the Magistrate Judge recognized, the list falls short because the claims relating to Buyers other than Ms. McKnight and Ms. Anderson lack any basis in the record. For example, "fact" number 18, on page 20 of Plaintiffs' Objections, asserts that "All procurement personnel at Honeywell were required to follow and comply with very specific corporate-wide procurement policies and procedures that dictated and defined the responsibilities of a buyer and that applied to all Honeywell buyers, direct and

---

2008) (requiring evidence that the potential opt-ins "perform[ ] the same type of duties as the named plaintiff" or that they "were victims of a common policy or plan that violated the law").

[13] In fact it appears that Ms. McKnight's supervisors were concerned about her failure to engage in more discretionary, independent activity, and that they counseled her about the need to take on more responsibility. *See* Sylvain Decl. ¶7.

indirect." Yet the only citations provided for this sweeping statement are the Plaintiffs' own declarations, where they say the same thing, essentially word for word, without explaining how they know that what they say is true of "all Honeywell buyers." They cannot obtain conditional certification merely by asserting facts without establishing any basis for their own knowledge.

Moreover, the facts in the record contradict Plaintiffs' wholly unsupported claims. The exemptions require, among other things, that the exempt employee exercise independent judgment and discretion over "matters of significance," a phrase that requires analysis of "the level of importance or consequence of the work performed." 29 C.F.R. §§541.200(a)(3), 541.202(a). That factor alone varies from Buyer to Buyer and group to group. Procurement Specialists in the PMT unit work primarily with contracts as small as a few hundred dollars (though those contracts add up over the course of a year); Buyers managed by Robert Chapman have discretion to negotiate and enter into contracts up to $10,000; Buyers managed by Jonathan Havlik have discretion up to $25,000; Buyers managed by Greg Allen regularly negotiate, execute, and oversee contracts in excess of $1,000,000; PMT Commodity Leaders have the discretion to negotiate and enter into individual contracts up to $6,000,000. These variations in monetary authority bear directly on the exemption analysis. There are differences, too, in the amount of discretion available to direct Buyers, who purchase component parts for production, as compared to indirect Buyers, who purchase ancillary goods and services. Chapman Decl. ¶¶7-8, 10.

Further, while Ms. McKnight claims that she only performed "clerical" duties, other Buyers exercise discretion and autonomy in their day-to-day job duties such that they qualify for the administrative exemption. This discretion and autonomy comes in many forms, whether in choosing suppliers to bid on a contract, in analyzing the appropriate constraints to apply to an e-

auction, in negotiating over specific terms, or in agreeing to bind one of the strategic business groups to a contract with particular terms.  Declaration of Toni Higgins ¶¶4-9; Declaration of Greg Allen ¶¶2-7; Declaration of Thang Ly ¶¶4-8.

A determination as to whether or not the Buyers Plaintiffs seek to represent qualify for the administrative exemption will be based on an analysis of the discretion and autonomy they exercise on a day-to-day basis, and the current record shows that the extent to which and manner in which the buyers exercise that discretion and autonomy varies from location to location, from manager to manager, from group to group, and from job classification to job classification.  The current record does not permit a conclusion, even under a lenient standard, that the collective Plaintiffs seek to represent is similarly situated.  The Magistrate Judge correctly understood the law, and applied it perceptively to the facts.  The Report and Recommendation should be adopted as the opinion of the Court.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Objections should be overruled and Magistrate Judge Sullivan's Report and Recommendation, Dkt. No. 49, should be adopted as the opinion of the Court.

Dated: July 11, 2017                    Respectfully submitted,

                                        HONEYWELL INTERNATIONAL, INC.
                                        HONEYWELL SAFETY PRODUCTS, USA, INC.
                                        DAVID M. COTE, CARL JOHNSON, AND
                                        MARK R. JAMES

                                        By their attorneys,

                                        */s/Mark W. Batten*
                                        Mark W. Batten (admitted *pro hac vice*)
                                        PROSKAUER ROSE LLP
                                        1 International Place

                                       Boston, Massachusetts 02110
                                       Tel: (617) 526-9600
                                       Fax: (617) 526-9899
                                       mbatten@proskauer.com
                                       *Attorneys for Defendants*

Of counsel:
Stephen Melnick
Littler Mendelson
One International Place, Suite 2700
Boston, MA 02110
617.378.6012
smelnick@littler.com

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's ECF filing system, this 11th day of July, 2017.

                                       /s/Mark W. Batten
                                       Mark W. Batten