UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
BARBARA MCKNIGHT and SHEILA     )
ANDERSON, INDIVIDUALLY AND ON   )
BEHALF OF ALL OTHER PERSONS     )
SIMILARLY SITUATED,             )
                                )
          Plaintiffs,           )
                                )
     v.                         )    C.A. No. 16-132 S
                                )
HONEYWELL SAFETY PRODUCTS USA,  )
INC.; et al.,                   )
                                )
          Defendants.           )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Plaintiffs Barbara McKnight and Sheila Anderson recently
worked as buyers at Defendants' Cranston and Smithfield, Rhode
Island facilities. (Second Am. Collective Action Compl. ("SAC")
¶¶ 7, 8, ECF No. 28.) They are suing their former employer for
violations of the Fair Labor Standards Act and Rhode Island's
Minimum Wage Act and Payment of Wages Act for failure to pay
overtime wages. (SAC ¶¶ 54, 64, 67.) Plaintiff McKnight, who
initiated this lawsuit while she was still employed by
Defendants, also alleges that Defendants retaliated against her
for starting this litigation, which led to her constructive
discharge. (Id. ¶¶ 76, 77.)

Before the Court is Plaintiffs' Motion for Conditional Certification and Notice to be Issued to Similarly Situated Employees Pursuant to 29 U.S.C. § 216(b) (ECF No. 18) ("Plaintiffs' Motion"). On June 13, 2017, Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R"), recommending that Plaintiffs' Motion be denied without prejudice because there was insufficient evidence from which she could conclude, even on the lenient standard applicable to a motion for conditional class certification, that other buyers employed by Defendants are similarly situated to Plaintiffs. (R&R 16, 21, ECF No. 49.) Magistrate Judge Sullivan suggested that Plaintiffs could renew their Motion if discovery reveals additional support for their claims that other buyers are similarly situated such that the alleged violations of employment law occurred to them as well. (Id. at 21.)

Plaintiffs filed an objection to the R&R, arguing that the Magistrate Judge misstated and misapplied the applicable law, as well as failed to properly consider the evidence submitted by Plaintiffs in support of their motion. The Court reviews de novo the parts of the R&R to which an objection is made. 28 U.S.C. § 636(b)(1).

After reviewing Plaintiffs' Motion, Defendants' objection, the exhibits submitted by both parties, the R&R, and Plaintiffs' objection thereto, the Court agrees with the Magistrate Judge's

analysis and recommendation that Plaintiffs' Motion be denied
without prejudice to refiling after further discovery has been
completed. Plaintiffs' argument emphasizing the lenient
standard for the preliminary showing required at this first tier
of the two-tier approach to conditional class certification
pursuant to 29 U.S.C. § 216(b) is well-taken. But, the Court
finds that Plaintiffs' objection simply re-summarizes the
statements in their declarations and the substantive corporate
policies submitted as exhibits and concludes that Plaintiffs
have not yet shown that other "buyers" employed by Defendants
are or were similarly situated to Plaintiffs.

The R&R (ECF No. 49) is, therefore, ACCEPTED. Plaintiffs'
Motion for Conditional Certification and Notice to be Issued to
Similarly Situated Employees Pursuant to 29 U.S.C. § 216(b) (ECF
No. 18) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
Chief Judge
Date: August 11, 2017

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BARBARA MCKNIGHT and     :
SHEILA ANDERSON,     :
Individually and on behalf of all     :
Other Persons Similarly Situated,     :
        Plaintiffs,     :
     :
    v.     :     C.A. No. 16-132S
     :
HONEYWELL SAFETY PRODUCTS     :
USA, INC. and HONEYWELL     :
INTERNATIONAL, INC., DAVID M.     :
COTE, CARL JOHNSON, and MARK R.     :
JAMES, in their Official and Individual     :
Capacities,     :
        Defendants.     :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Before the Court for report and recommendation is the motion of Plaintiffs Barbara

McKnight and Sheila Anderson for conditional certification and notice to be issued to similarly

situated employees pursuant to 29 U.S.C. § 216(b), the Fair Labor Standards Act ("FLSA").

Plaintiffs have sued their former employer,[1] Honeywell Safety Products USA, Inc. and Honey

International, Inc., as well as three senior Honeywell managers (collectively, "Honeywell").

Plaintiffs allege that they and other non-management buyers and procurement personnel whose

primary duty is to procure goods on behalf of Honeywell were misclassified as exempt from

FLSA provisions, and were required to work in excess of forty hours per week without the

overtime premium to which they were entitled.  Claiming that they and the other members of the

---

[1] Both Plaintiffs were working for Honeywell when their Complaint was filed.  Both are now former employees.  In Counts IV and V of the Complaint, McKnight alleges that, after this action was initiated, she was subjected to retaliatory actions that forced her to resign.  ECF No. 28 ¶¶ 70-83.  The retaliation claim is not relevant to the issues addressed in this report and recommendation.  The record does not disclose why Anderson's employment ended.

proposed collective are similarly situated, Plaintiffs ask the Court to conditionally certify this class as a FLSA collective action so that a Court-approved notice can be sent to the members of the collective.

## I.   BACKGROUND[2]

Named Plaintiffs were employed by Honeywell as buyers based in Rhode Island, McKnight from September 2013 until she resigned in September 2016, Anderson from January 2010 until May 2016.  McKnight Aff. I ¶ 3; Compl. ¶ 76; Anderson Aff. ¶ 2.  In the Complaint, they allege that they "and others similarly situated" had the primary duty of submitting orders to vendors for certain products listed in the purchase orders they received.  Compl. ¶ 23.

As described by McKnight and Anderson in their affidavits, their work was primarily data entry and routine clerical tasks, involving the entry of requests into an operating system that generated a purchase order, which was approved by one or more managers in accordance with Honeywell's policy.  McKnight Aff. II ¶ 7; Anderson Aff. ¶¶ 10-11.  Both aver that, towards the end of their tenure at Honeywell, there were changes; for example, Anderson described being required to ask vendors for a lower price, but still with no authority to actually negotiate, Anderson Aff. ¶ 13, while McKnight noted that much of the discretionary procurement work was outsourced to India, where procurement auctions were conducted.  McKnight Aff. II ¶ 8.  Both claim that their work as Honeywell buyers did not ever require any great skill or the exercise of independent judgment, did not include any managerial responsibilities, did not involve the hiring and firing of others, and did not involve any discretion regarding amounts purchased, purchase

---

[2] These facts are drawn from the Second Amended Collective Action Complaint ("Complaint" or "Compl.") (ECF No. 28); the documents submitted by Plaintiffs (ECF Nos. 37-1, 37-3, 37-4); the three affidavits submitted by McKnight ("McKnight Affs. I, II and III") (ECF Nos. 28-1, 18-2, 43-2); the affidavit submitted by Anderson ("Anderson Aff.") (ECF No. 37-5); and the ten declarations submitted by Honeywell from its employees, Greg Allen, Dana Barton, Robert Chapman, Jonathan Pascoe and Lynn Sylvain ("____ Decl.") (ECF Nos. 12-2 to 12-11).

price or payment terms.  Rather, they aver that procurement was strictly controlled by corporate-wide procurement policies and procedures that required management approval of any purchase, no matter how small.  McKnight Aff. I ¶¶ 5, 7, 8; McKnight Aff. II ¶¶ 3, 5; Anderson Aff. ¶¶ 5-10, 12.  Both allege that Honeywell paid them a salary and considered them FLSA-exempt, but that they were expected, indeed required, to work more than forty hours per week and never received overtime pay for work in excess of forty hours per week.  McKnight Aff. I ¶ 9; McKnight Aff. II ¶¶ 3, 5; Anderson Aff. ¶¶ 2-3.  Neither McKnight nor Anderson avers that she has personal knowledge of Honeywell procurement procedures beyond the confines of her own job.

It is the unverified Complaint that adds the critical assertion that all of Honeywell's employees who are engaged in procurement, but are not managers, are "similarly situated" to Plaintiffs, in that they perform the same non-managerial routine clerical duties, such as data entry, and have no discretionary authority to deviate from Honeywell's policies and no authority to commit Honeywell in matters of significant financial impact.  Compl. ¶¶ 22-33.  Yet, as with Plaintiffs, Honeywell treats them all as exempt, pays them a salary, expects them to work more than forty hours per week, keeps no records of such extra work and pays no overtime.  Compl. ¶¶ 25-28.  The Complaint claims that Honeywell's procurement personnel have the following job titles: Buyer, Senior Buyer, Buyer I, Buyer II and Site Buyer.[3]  Compl. ¶ 36.  In the class certification record, there is no job description for any of these positions.

---

[3] The declaration of Honeywell's Human Resource Director of Data Analytics (Joshua Pascoe) states that Honeywell does not have any position called Buyer I or Buyer II.  Rather, it has Buyers, Buyer/Planners, Lead Buyers, Senior Buyers, Senior Buyer Planners and Buyer Category Specialists.  Pascoe Decl. ¶ 5.  Attached to his declaration is a list establishing that McKnight and Anderson were both "Buyers."  ECF No. 19 at 2.  Their affidavits confirm that they were "Buyers."  McKnight Aff. I ¶¶ 2, 5-6; Anderson Aff. ¶ 2.

To buttress the "similarly-situated" allegations in their Complaint, Plaintiffs submit three documents.

The first is a form prepared by the insurance company, Cigna, acting as the manager of Honeywell's disability program.  The version of the form in the record lists the "Job Requirements" for McKnight, based on her job title (listed as "Site Buyer") as filled out by her supervisor, Lynn Sylvain, on September 29, 2015.  ECF No. 37-1.  The form requires the checking of boxes with respect to the physical requirements (such as the ability to lift, sit and stand), as well as the temperament and aptitudes needed for McKnight's position.  As pertinent to the pending motion, the boxes checked seem inconsistent.  For example, the completed form indicates that the position required such temperament characteristics as: "accept responsibility for control, direction, or planning of an activity"; "perform under stress when confronted with emergencies or unusual situation"; and "make generalizations, judgements, or decisions based on subjective or objective criteria such as with the five senses or factual data."  Yet, it also called for a worker able to "perform repetitive or continuous activity according to set procedures" and "perform without room for independent action or judgement."  ECF No. 37-1.  The form describes a "Site Buyer" as a worker who is required to "provide administrative support services including: answering the phone, e-mails, computer data entry, report writing."  ECF No. 37-1.  It states that the work hours for a "Site Buyer" are "typically 8:30 – 5:00, M-F."[4]  ECF No. 37-1.

The second document establishes that Honeywell has company-wide human resource policies, which cover an array of matters such as workplace harassment and alcohol and drugs in

---

[4] In the Complaint, Plaintiffs allege that there is a document similar to this one, but prepared "[i]n or about December 2015," which has a section called "Job Characteristics" that designates McKnight's job as "'Full-Time'; 'Non-Exempt'; 'Non-Union.'"  Compl. ¶ 34.  None of this appears on the September 2015 version of the document Plaintiffs submitted in support of the pending motion.  Plaintiffs have provided the Court with no document reflecting the pleading allegation that there is a Honeywell document classifying McKnight's job as non-exempt.

the workplace.  Plaintiffs attach the full text only of the policy for employees classified as non-exempt, which makes clear that all non-exempt time worked must be recorded and overtime must be paid for non-exempt work over forty hours per week.  ECF No. 37-4.

The third document is actually a set of documents.  Collectively, they establish that Honeywell has company-wide procurement policies with strict protocols requiring that all purchases must be confirmed by a contract or purchase order signed by authorized personnel. ECF No. 37-3 (sealed).  However, the submission provides no information regarding whether buyers may ever issue a purchase order without an approval, or what approvals are required for what dollar amount – in short, these policies establish only that there are policies in place and that buyers must adhere to them.  In her third affidavit, with no indication of the scope of her personal knowledge, McKnight avers that buyers have no limit on the amount they may spend for the products or services they are authorized to purchase, but that all purchases, no matter how small, are required to be approved by management, and the higher the value, the more approvals are needed.  McKnight Aff. III ¶¶ 1-2; accord Anderson ¶ 12.

Honeywell counters Plaintiffs' factual proffer with nine declarations from Honeywell buyers and procurement managers from all over the United States.  These declarations establish that Honeywell has many different business groups, each of which does its own procurement both for raw materials for its manufacturing sectors (called "direct" purchasing), and for items necessary to conduct its business, such as office supplies ("indirect" purchasing).  See, e.g., Havlik Decl. ¶¶ 2-6; Barton Decl. ¶¶ 3-4; Marionneaux Decl. ¶¶ 3-7; Chapman Decl. ¶ 4.  As described in these declarations, Honeywell's approach to procurement differs across business lines in part due to its acquisition of businesses that retained legacy procedures, and in part

5

because different managers may adopt differing procedures depending on the skills of the employees who carry out these functions.

For example, buyers in the Aerospace Group are expected to be "extremely strategic," to research, select and engage suppliers, and to negotiate both prices and terms. Barton Decl. ¶¶ 3-4. While some of the work is clerical, most is not and an employee who fails to exercise discretion and authority is subject to discipline. Barton Decl. ¶¶ 5-6. Audrey Koczan, an indirect buyer in Aerospace, confirmed that she has discretion to source suppliers and to decide on the method to solicit proposals (for example, by a request for quotations or by an auction); she is expected to use judgment to analyze proposals and to negotiate price and terms, as well as to negotiate collateral agreements addressing such issues as the need for a nondisclosure agreement. Koczan Decl. ¶¶ 5-6.[5] Similarly, Thang Ly, also an Aerospace indirect buyer, avers that he is tasked with the purchase of engineering services, including to ensure that the engineers engaged can timely provide the necessary expertise and quality. Ly Decl. ¶ 2. Ly decides whether to run auctions or to negotiate directly and chooses the most qualified supplier, which may not be the cheapest. He also negotiates terms and contract language, sometimes with the assistance of the legal department. Ly Decl. ¶¶ 2-6. Ly selects the engineering services necessary to allow Honeywell to satisfy the requirements in its contracts with commercial and governmental customers. Ly Decl. ¶¶ 2-6.

In the Performance Materials & Technologies Group ("PMT"), managers have varying expectations and impose differing levels of responsibilities on buyers, some of whom are responsible for negotiation, procurement and execution of contracts worth up to several million

---

[5] The Koczan Declaration, like all of the declarations submitted by Honeywell non-managerial buyers, states that she was advised that her statement was to be submitted in connection with certification of a collective that she could join to pursue a claim for overtime pay. Koczan Decl. ¶ 10; see Ly Decl. ¶ 9; Higgins Decl. ¶ 10.

dollars.  Marionneaux Decl. ¶¶ 1-3.  While there is some routine paperwork required of buyers in PMT, each position has savings goals and buyers have discretion and autonomy as to how to achieve the goals.  Marionneaux Decl. ¶¶ 4-5.  These buyers do not work a set schedule and are free to work at home or to leave during the work day; they are expected to manage the workload with little managerial oversight.  Marionneaux Decl. ¶ 7.  Toni Higgins, an indirect buyer who works in PMT, confirmed that she works independently and is allowed to use whatever means she chooses to select the best vendors able to make timely delivery at the most advantageous prices and terms.  Higgins Decl. ¶¶ 2-5.  She has the discretion to overrule a request from the business for a specific supplier and the responsibility to decide what to do if a chosen vendor fails to perform.  Higgins Decl. ¶¶ 6-8.

In the Automation and Control Solutions Group ("ACS"), declarations were submitted from managers in three separate business units, each with different approaches to procurement. For example, in Sensing and Productivity Solutions, direct buyers function as mini-program managers.  They oversee sourcing of supplies for Honeywell operations with authority and discretion to arrange purchases in line with product forecasts and to ensure that operations proceed with a smooth flow of supplies; such purchases regularly exceed $1 million.  Allen Decl. ¶¶ 2-3.  Indirect Buyers vary widely in terms of the degree of discretion and authority they are permitted.  Depending on the capacity of the individual, they are given discretion and authority to select suppliers and negotiate contracts up to $25,000 per purchase order.  Allen Decl. ¶¶ 4-6. Similarly, buyers in the ACS legacy business unit who report to manager Jonathan Havlik are expected to source supplies and negotiate price and terms, with the authority to place purchase orders up to $25,000 without further approval.  Havlik Decl. ¶¶ 2-4.

In the Industrial Safety business unit of ACS, in which both McKnight and Anderson worked, the Global Strategic Sourcing Manager Robert Chapman averred that buyers working directly and indirectly under his supervision are expected to exercise substantial discretion and use independent judgment to solicit quotes from vendors, including finding new suppliers and recommending specific quotes for purchases under $10,000.  Chapman Decl. ¶¶ 3-4, 6-12. McKnight's direct supervisor, ACS manager Lynn Sylvain, avers that her buyers are located in Rhode Island, California, Ohio, Mexico and Brazil and are responsible for procurement of office, landscaping, janitorial, cafeteria, maintenance and waste removal services for specific Honeywell site locations in Pennsylvania and Minnesota.  Sylvain Decl. ¶¶ 1-2.  These buyers are responsible to determine which Honeywell contract will govern new business, whether to conduct an auction, as well as to conduct the auction and negotiate the price; each is expected to achieve $200,000 in savings and to use auctions for at least 40% of the total budget.  Sylvain Decl. ¶¶ 3-6.

## II.    LEGAL STANDARD

### A.    Classification as Exempt

FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  However, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from these FLSA's overtime requirements.

29 U.S.C. § 213(a)(1).  The regulations that interpret FLSA[6] provide that employees are classified as "executive" if their "primary duty is management" of other employees, while the exemption for "professional" covers employees whose work requires advanced and specialized knowledge.  29 C.F.R. §§ 541.100(a), 541.300(a).  The exemption category relevant to this case is for employees working in an "administrative" capacity as defined in 29 C.F.R. § 541.200(a).

Section 541.200 provides that the administrative exemption covers an individual who is paid a salary of not less than $455 per week, performs non-manual work "directly related to the management or general business operations of the employer or the employer's customers," and whose primary duty includes "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1-3).  The applicable regulation specifically lists "purchasing" and "procurement" as functional areas that constitute exempt work "directly related to management or general business operations."  29 C.F.R. § 541.201(b).  To provide further guidance, the regulation has specific examples of jobs that qualify for the administrative exemption, as relevant here, including:

> Purchasing agents with authority to bind the company on significant purchases generally meet the duties requirements for the administrative exemption even if they must consult with top management officials when making a purchase commitment for raw materials in excess of the contemplated plant needs.

29 C.F.R. § 541.203(f).  The United States Department of Labor has amplified on the regulatory interpretation of the applicability of the administrative exemption to purchasing agents in an Opinion Letter[7] dated March 6, 2008.  Opinion Letter Fair Labor Standards Act (FLSA), 2008

---

[6] Such regulations, adopted pursuant to the Administrative Procedures Act, 5 U.S.C. § 553(b)(A), have the force and effect of law.  Perez v. Mortg. Bankers Ass'n, 135 S. Ct. 1199, 1204-05 (2015); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413 (1945).

[7] Such agency interpretations of the agency's own regulations are to be afforded deference, though the extent of such deference has become controversial.  Perez v. Mortg. Bankers Ass'n, 135 S. Ct. 1199, 1204 (2015); id. at 1211 (Scalia, J, concurring) (discussing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).

WL 833151 (U.S. Dep't of Labor Mar. 6, 2008).  The Opinion Letter confirms that the exemption applies to employees who place orders for material, equipment and supplies so that manufacturing processes function smoothly, who play a primary role in vendor selection and negotiation, and who are authorized to make purchases up to $25,000 without managerial review. Opinion Letter Fair Labor Standards Act (FLSA), 2008 WL 833151, at *1.

### B.    Collective Action Certification

Pursuant to Section 216(b), employees not paid as required by FLSA, including those who have been misclassified as exempt and not paid overtime, may sue on behalf of themselves and "other employees similarly situated."  29 U.S.C. § 216(b).  However, unlike Fed. R. Civ. P. 23 certification, for an FLSA collective action, potential plaintiffs are required affirmatively to opt in – "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Id.; see generally Brown v. Barnes & Noble, Inc., No. 16-cv-07333(RA)(KHP), 2017 WL 1653576, at *4 (S.D.N.Y. May 2, 2017); Roberts v. TJX Cos., Inc., C.A. No. 13-cv-13142-ADB, 2017 WL 1217114, at *2 (D. Mass. Mar. 31, 2017); Reeves v. Alliant Techsystems, Inc., 77 F. Supp. 2d 242, 246 (D.R.I. 1999).  In order to facilitate FLSA's collective action mechanism, district courts have the discretion to authorize that notice be sent in "appropriate cases" to putative plaintiffs informing them of "the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  Roberts, 2017 WL 1217114, at *2; see Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).  To be conditionally certified for purpose of notice under FLSA, "the putative class members [must be] 'similarly situated' with the named plaintiffs."  O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246, 249 (D. Mass. 2006).

Neither FLSA nor the First Circuit has established a standard that district courts must apply in determining whether potential plaintiffs are "similarly situated," but courts in this Circuit have predominantly applied a two-tiered approach.  Roberts, 2017 WL 1217114, at *2 (citing cases); see Mejias v. Banco Popular de P.R., 86 F. Supp. 3d 84, 85-86 (D.P.R. 2015); Reeves, 77 F. Supp. 2d at 246-47.  First, the court must make a preliminary determination whether the potential plaintiffs are "similarly situated."  Roberts, 2017 WL 1217114, at *3.  This stage ordinarily happens before discovery, and is triggered by the plaintiff's motion for conditional certification.  Id.  After discovery, on defendant's motion for de-certification based on the contention that the plaintiffs who have opted in are not in fact similarly situated, the court "makes a final 'similarly situated' determination."  Id.  "At that [second] stage, courts consider factors such as: 1) the disparate factual and employment settings – e.g. whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations." Trezvant v. Fid. Emp'r Servs. Corp., 434 F. Supp. 2d 40, 45 (D. Mass. 2006) (quoting Reeves, 77 F. Supp. 2d at 247).  This two-stage process allows the court to know who has opted in when determining whether the named plaintiffs are actually similarly situated.  Roberts, 2017 WL 1217114, at *3.

Because Plaintiffs' motion for conditional certification arises at the first stage, before discovery, the Court need only make a "preliminary finding" as to whether McKnight and Anderson are similarly situated as to other potential plaintiffs.  Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 16 (D.P.R. 2005).  The standard for this preliminary showing is lenient; "[a]t this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with

respect to the evidence presented." <u>Roberts</u>, 2017 WL 1217114, at *3 (quoting <u>Trezvant</u>, 434 F. Supp. 2d at 43). "Because the court has minimal evidence at the notice stage, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." <u>Reeves</u>, 77 F. Supp. 2d at 246 (internal quotations marks omitted). Plaintiffs' burden is met when they "mak[e] some showing that 'there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." <u>Roberts</u>, 2017 WL 1217114, at *3 (quoting <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010)). It is overall a "low standard of proof." <u>Myers</u>, 624 F.3d at 555.

　　　In considering a stage-one, conditional certification motion, courts accept and consider the unverified allegations in the complaint, as well as sworn statements, affidavits and declarations from both the employees and the employer. What is critical is that plaintiffs must provide the court with some evidence of a common policy or practice potentially imposed on all members of the proposed collective that potentially violates FLSA. <u>Brown</u>, 2012 WL 1653576, at *4. Ultimately, plaintiffs must "demonstrate a nationwide policy pursuant to which [employees] are assigned duties that render [employer's] exempt classification inappropriate." <u>Jenkins v. TJX Cos., Inc.</u>, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012). At stage one, this means only that the court must be satisfied "not that there has been an actual violation of law but rather [that] the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." <u>Roberts</u>, 2017 WL 1217114, at *6 (quoting <u>Kalloo v. Unlimited Mech. Co. of NY</u>, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)).

For example, in <u>Reeves</u>, the plaintiffs amplified the complaint allegations with a copy of an arguably broadly-applicable policy memorandum mandating a forty-five-hour week without overtime for employees classified as exempt.  77 F. Supp. 2d at 247 & n.3.  Similarly, in <u>Mejias v. Banco Popular</u>, the court was satisfied that the plaintiffs met the threshold of showing both aggrieved individuals and similarly-situated persons sufficient to be considered class members based on evidence that the plaintiffs and other employees with similarly, but not necessarily identical, jobs were uniformly instructed to "clock in" only after completing pre-shift tasks and to "clock out" before the cash drawer was balanced, yet none were paid for that work.  86 F. Supp. 3d at 86.  Thus, courts will conditionally certify a collective action as long as the putative plaintiffs share similar job requirements and pay provisions.  <u>See</u> <u>Trezvant</u>, 434 F. Supp. 2d at 44, 48 (holding "that the plaintiffs are required to put forth some evidence that the legal claims and factual characteristics of the class in this case are similar").

In <u>Roberts</u>, the most recent relevant decision in this Circuit,[8] the court relied on depositions from eight plaintiffs who worked in eight different states; they uniformly described spending most of their workday performing non-exempt tasks.  2017 WL 1217114, at *4.  No potential opt-in testified otherwise.  <u>Id.</u> at *6.  Evidence showed that "similarly situated" workers shared the same or similar job descriptions, and detailed company-wide policies set forth how all employees covered by these job descriptions were required to do their job.  <u>Id.</u> at *4.  This evidence was found to be sufficient to support the inferences that the named plaintiff's experiences with respect to compensation may violate FLSA, and, with respect to the job description, may be representative of others in the collective.  <u>Id.</u>  <u>Roberts</u> distinguishes its facts from cases where named plaintiffs testify to performing primarily non-exempt tasks, while

---

[8] More recent, but less relevant, is <u>Wanshen Li v. MW S. Station, Inc.</u>, C.A. No. 15-12961-FDS, 2017 WL 2407256 (D. Mass. June 2, 2017).

unnamed potential opt-in employees testify that they performed work properly classified as exempt. Id. at *6 (citing Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 357 (E.D.N.Y. 2015)).

Relatedly, in Brown, the district court rejected a stage-one certification motion because the plaintiffs presented proof only that there was a uniform job description for all café managers, that all were treated as exempt and that the employer had uniform standards for such matters as hours, food preparation, pricing, customer service and staffing.  2017 WL 1653576, at *5-8. Because the job description described work properly classified as exempt, which the plaintiffs alleged mis-described their primary duties, and because none of the policies corroborated the claim that their primary tasks were non-exempt, the court held that the "[p]laintiffs' evidence in this case is too thin to satisfy their modest burden for conditionally certifying a class." Id. at *8; cf. Cunha v. Avis Car Rental, LLC, C.A. No. 16-10545-FDS, 2016 WL 6304432, at *3 (D. Mass. Oct. 26, 2016) (evidence of job description common to all "damage managers" sufficient to show common duties arguably non-exempt).

At stage one, the court must eschew weighing credibility and finding facts on ultimate issues; therefore, it should not make merits-related decisions in reliance on counter declarations from the employer contradicting plaintiffs' asseverations.  Brown, 2017 WL 1653576, at *3 n.6. Nevertheless, when the employer makes a robust factual presentation that there is no widespread FLSA violation, the court should not ignore it.  Rather, such proof heightens the court's responsibility to assure that there is some factual basis for plaintiffs' claim of class-wide impact before conditional certification should be granted.  Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991).  For example, courts should take note of sworn statements from other employees in the proposed collective that contradict those of the named plaintiffs,

particularly if the named plaintiffs lack personal knowledge of practices in other areas of the

business.  Roberts, 2017 WL 1217114, at *6; see O'Donnell, 429 F. Supp. 2d at 250 (when

"[t]he only evidence offered are the affidavits of the individual plaintiffs, neither of whom has

personal knowledge of the practices of [employer's] management in other divisions or offices[,]

[i]t is far from clear that the plaintiffs are similarly situated with: [employees] in other parts of

the country").  On the other hand, the stage-one motion is routinely granted in cases where the

plaintiffs present some evidence of a policy potentially impacting all of a group of employees,

for example to pay them hourly but to require them to work more than forty hours per week

without overtime pay.  See, e.g., Torrezani v. VIP Auto Detailing, Inc., 318 F.R.D. 548, 552,

557-58 (D. Mass. 2017) (potentially uniform policy of paying vehicle cleaners $12 per hour,

requiring work for between fifty and sixty hours per week, with no overtime pay, sufficient for

conditional certification of collective); Tapia v. Zale Del., Inc., No. 13-cv-1565-BAS, 2016 WL

1385181, at *11-12 (S.D. Cal. Apr. 6, 2016) (evidence of uniform policy of routinely shaving

time from hourly workers resulting in failure to pay overtime sufficient for conditional

certification of collective); Norceide v. Cambridge Health Alliance, C.A. No. 10-11729-NMG,

2014 WL 7745453, at *1 (D. Mass. Feb. 24, 2014) (conditional certification granted based on

policy of refusing to compensate hourly workers for missed or interrupted lunch breaks or for

work outside of scheduled shift).

## III.  ANALYSIS

Plaintiffs seek conditional certification of a collective action comprised of all individuals

employed by Honeywell in any of its business groups anywhere in the United States who are

non-management buyers or procurement personnel with the primary job duty to procure goods or

services.  Plaintiffs assert that certification is warranted because: (1) all non-management buyers

or procurement personnel are subject to a common policy in that they are classified as exempt and paid a salary, with no overtime pay for work beyond forty hours a week; (2) the named Plaintiffs claim that their jobs consisted primarily of data entry and routine clerical tasks with no room for discretion or independent judgment; (3) McKnight's "job requirements," as listed on the Cigna disability insurance form, were "administrative support services including: answering the phone, e-mails, computer data entry, report writing" involving repetitive activity without room for independent judgment; and (4) Honeywell's company-wide procurement policy requires a written purchase order or contract, the issuance of which may require management approvals, and both McKnight and Anderson lacked the authority ever to enter into any purchase order or contract without management approval.

With no class-wide job description confirming wider applicability of Plaintiffs' *ipse dixit* asseverations, and no evidence to suggest the existence of a company policy potentially violative of FLSA, I find that this proffer falls well short of the low bar set for stage-one conditional certification of a collective action.  The reasons follow.

### A.     Uniform Policy of Classifying Buyers as Exempt

Honeywell's classification of buyers as exempt, standing alone, is insufficient to satisfy the lenient standard for certification.  See Brown, 2017 WL 1653576, at *5 (citing Costello v. Kohl's Ill., No. 13-cv-139 (GHW), 2014 WL 4377931, at *4 (S.D.N.Y. Sept. 4, 2014)).  This is explicit in the applicable FLSA regulations where the function of procurement is specifically classified as exempt.  29 C.F.R. § 541.201(b) ("purchasing" and "procurement" are functional areas that constitute exempt work "directly related to management or general business operations"); 29 C.F.R. § 541.203(f) (jobs that qualify for the administrative exemption include "[p]urchasing agents with authority to bind the company on significant purchases").

16

The affidavits of McKnight and Anderson offer the only evidence that Honeywell's buyers are so limited in the exercise of discretion and independent judgment as to constitute a non-exempt position.  These affidavits, however, are not enough where there is nothing from which the Court might infer that McKnight and Anderson have personal knowledge of anything beyond their own jobs or other jobs in their Rhode Island office.  See O'Donnell, 429 F. Supp. 2d at 250.  Further, while the Court may not rely on the declarations submitted by Honeywell as evidence that Plaintiffs' claims lack merit, Brown, 2017 WL 1653576, at *3 n.6, the declarations from Honeywell buyers who are members of the collective as proposed, yet aver to performing work that is clearly exempt according to 29 C.F.R. § 541.200(a)(1-3), should not be entirely ignored.  Rather, these submissions provide a further reason to look for evidence beyond the inconsistent affidavits of McKnight and Anderson for some suggestion that other buyers performed primarily non-exempt tasks and were improperly classified under FLSA.  Roberts, 2017 WL 1217114, at *6.  In this record, there is no such proof.

### B.      Named Plaintiffs' Descriptions of their Jobs

When a common job description sets out tasks that are primarily non-exempt, some courts rely on such a document to conditionally certify a collective of the workers covered by the description.  See, e.g., Cunha v. Avis, 2016 WL 6304432, at *2 (common job description shows collective shares similar responsibilities); Rossello v. Avon Prods., Inc., No. 14-1815(JAG), 2015 WL 5693018, at *2 (D.P.R. Sept. 28, 2015) (common job description confirms collective performed similar work); but see Brown, 2017 WL 1653576, at *6 (common job description not enough if named plaintiffs allege they did different work).  The problem here is that Plaintiffs have submitted no job description, either for their own jobs or for the positions held by others in the proposed collective.  Instead they rely only on their own descriptions of their work.  This is

insufficient because there is nothing in the record to support an inference that their work experiences are similar to those of others in the proposed collective.  See Bramble v. Wal-Mart Stores, Inc., C.A. No. 09-4932, 2011 WL 1389510, at *2 (E.D. Pa. Apr. 12, 2011) ("plaintiffs have produced little evidence to substantiate their assertions that their responsibilities, as performed, were similar to those actually performed by other [employees]").  This cake is iced by Honeywell's proffer from its managers and, more significantly, from other buyers, which establishes that Plaintiffs' experiences cannot be generalized.  Id. (without making any findings on merits, court considers declarations from other employees, that "largely contradict[] plaintiffs' assessments of their own job responsibilities," in order to confirm limited scope of plaintiffs' knowledge of employer's practices beyond their own jobs).

### C.    Description of McKnight's Job Requirements on Cigna Form

The Cigna insurance form is not a substitute for the missing job description because there is no evidence to permit the inference that it applies to any other Honeywell procurement personnel.  On its face, it appears to be limited to someone specifically like McKnight.  For example, it uses the job title "Site Buyer" to refer to McKnight's position yet there is no evidence that "Site Buyer" is a recognized job category applicable to any other employee.  To the contrary, both McKnight and Anderson describe themselves as "Buyers."  McKnight Aff. I ¶ 4; Anderson Aff. ¶ 2.  The Pascoe Declaration confirms that "Buyer" is the correct appellation for Plaintiffs, as well as others.  Pascoe Decl. ¶¶ 5-6; ECF No. 19 at 2.  The Pascoe Declaration lists the other Honeywell job titles that use the term "buyer"; "Site Buyer" is not among them.  Id.  A clue to this discrepancy may be found in the Sylvain Declaration, which avers that McKnight and some of the others Sylvain supervised were tasked with purchasing for specified "sites."  Sylvain Decl. ¶ 2.  However, this is sheer guess-work; what matters is that the Cigna

form does not permit an inference or even a suggestion that its "job requirements" are equally applicable to other buyers in the proposed collective.

In any event, even if the Court were to assume that the Cigna form extends to any employee other than McKnight herself, it does not amount to evidence that the work performed by such individuals is primarily non-exempt.  Rather, the Cigna form provides that McKnight's "job requirements" include the ability to:

- Accept responsibility for control, direction, or planning;
- Perform a variety of duties, often from one task to another without loss of efficiency or composure;
- Perform under stress when confronted with emergencies or unusual situations;
- Perform "with demands of precise attainment of set limits, tolerances, or standards";
- Work with people beyond giving and receiving instruction such as serving on a team or committee; and
- Use subjective or objective criteria to make generalizations, judgments or decisions.

ECF No. 37-1 at 2.  While these responsibilities are juxtaposed with the ability to "perform repetitive or continuous activity" and "perform without room for independent action or judgement," the Cigna form provides no information regarding which functions are dominant or primary.  Id.  If one were simply to compare the number of items that seem to describe exempt work to the number of items that seem to describe non-exempt work, the form tips toward an exempt position.  However, it would be sheer speculation for the Court to engage in such an exercise.  At bottom, this form does not confirm that McKnight's work was primarily routine and clerical; if anything, it tends to contradict her affidavit's averment to that effect.

Based on the foregoing, I find that the Cigna form is neither enough to permit the Court to infer the existence of a policy that potentially impacts all members of the proposed collective nor sufficient to suggest the existence of a company-wide policy that potentially violates FLSA.

**D.     Need for Management Approval of Purchase Orders**

Plaintiffs' evidence of the need for management approval is twofold. First, they direct the Court to the company-wide policy requiring buyers to procure appropriate management approvals. However, this policy does not say one way or the other whether buyers ever have the authority to bind Honeywell without such approvals. Second, they point to the McKnight/Anderson averments, each of which contain the unsubstantiated claim that all Buyers lack the authority to make purchases without approval of a manager. McKnight Aff. III ¶¶ 1-2; Anderson Aff. ¶ 12. For starters, the sufficiency of this proof founders on the applicable regulations, which make clear that the requirement of management approval does not necessarily undermine the exempt status of buyers who otherwise have discretion and exercise independent judgment. 29 C.F.R. § 541.203(f) (administrative exemption applies to procurement workers, even if they must consult with top management officials when committing to purchase raw materials in excess of contemplated plant needs); see FLSA Opinion Letter, 2008 WL 833151, at *1. These regulations establish that discretion and independent judgment are the determinative characteristics, not the requirement to obtain management approval. Therefore, a company-wide requirement of management approval for all buyer purchasing is not enough to render suspect a company-wide classification of the procurement function as an exempt position.

And even if a management approval requirement, standing alone, were material to the certification of a collective action, this proffer also suffers from the defect discussed above – that McKnight and Anderson's averments are limited to their personal knowledge. Faced with a record establishing that the need for management approval actually varies widely and that buyers are expected to use discretion and independent judgment even when management approval is needed, the Court needs some scintilla of evidence to suggest that Plaintiffs' claim – that management approval was required for even the smallest purchase so that buyers never exercise

discretion or judgment – may be generalized across the proposed collective.  See Brown, 2017 WL 1653576, at *7 ("neither the job description itself, nor Plaintiffs' conclusory and potentially incomplete descriptions of their duties, support Plaintiffs' theory that all CMs nationwide primarily performed non-exempt work").  Plaintiffs have submitted nothing permitting that inference.

## IV.    CONCLUSION

Based on the foregoing analysis, I recommend that Plaintiffs' motion for conditional certification and notice to similarly-situated employees, pursuant to 29 U.S.C. § 216(b), (ECF No. 18) be denied without prejudice to Plaintiffs renewing their motion should discovery reveal additional evidentiary support for their claims that Honeywell's non-management buyers are similarly situated with respect to an alleged FLSA violation.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 13, 2017