UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA MCKNIGHT and | : | |
| SHEILA ANDERSON, | : | |
| Individually and on behalf of all | : | |
| Other Persons Similarly Situated, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 16-132WES |
| | : | |
| HONEYWELL SAFETY PRODUCTS | : | |
| USA, INC. and HONEYWELL | : | |
| INTERNATIONAL, INC., DAVID M. | : | |
| COTE, CARL JOHNSON, and MARK R. | : | |
| JAMES, in their Official and Individual | : | |
| Capacities, | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Pending before the Court is Plaintiffs' Motion to Compel Further Testimony. ECF No. 75. The motion seeks an order compelling Defendants to produce a Wage-Hour Compliance Training document and documents related to an Employee Classification Review project known as the "Exemption Toolkit" (singly and collectively, "Document[s]"), which were withheld in reliance on the attorney-client privilege. If the privilege assertion is overruled and the Documents are produced, Plaintiffs also seek further testimony from Defendants' Fed. R. Civ. P. 30(b)(6) designee to explain the Documents.

      After the motion was referred to me for determination, it was discussed with counsel at a hearing held on January 15, 2019, and "the parties [we]re urged to meet and confer regarding whether an in camera review is advisable and to be prepared to proffer documents for in camera review at the hearing on the motion so that further delay may be avoided." Text Order of Jan.

15, 2019. Consistent with this directive, Defendants tendered the Documents for *in camera* review along with their objection to the motion on January 22, 2019.

The motion is now fully briefed and the Court has conducted an *in camera* review of the Documents. Based on that review, the Court finds that the assertion of the attorney-client privilege is well-founded, so that no hearing is necessary on Plaintiffs' request for further testimony regarding the Documents. Accordingly, Plaintiffs' motion to compel further testimony is denied.

## I.    Background, Law and Analysis

Plaintiffs, formerly employed as procure personnel or buyers by Honeywell,[1] have brought a collective action pursuant to 29 U.S.C. § 216(b), the Fair Labor Standards Act ("FLSA"), as well as Rhode Island state wage laws. They claim that they were improperly classified as "exempt," required to work more than forty hours per week and not paid the overtime to which they were entitled under FLSA and Rhode Island wage laws. Central to their claims is Defendants' approach to classification of employees as exempt or non-exempt during the class period.

**Wage-Hour Compliance Training**. During the Fed. R. Civ. P. 30(b)(6) deposition of Honeywell's designee on the criteria used to classify procurement personnel as exempt or non-exempt (Laurie Thorman), Ms. Thorman testified that she participated in an annual on-line training on U.S. wage-hour compliance conducted by in-house counsel, which she attended for the purpose of "seeking legal advice." ECF No. 75-2 at 7. Defendants asserted the attorney-client privilege with respect to the training Document and objected when Ms. Thorman was

---

[1] Plaintiffs' Second Amended Collective Action Complaint names two Honeywell entities, claiming that they are the "employer" pursuant to FLSA. ECF No. 28 ¶¶ 8-10. "Honeywell" refers to both.

asked questions about the content of the training.[2]  Defendants buttressed their attorney-client privilege assertion with the Declaration of Elizabeth Lawrence, an attorney employed by Honeywell, who averred that she is the attorney who prepared and conducted the training to provide legal advice to Human Resources staff.  ECF No. 76-1 ¶¶ 1-7.  The Court's *in camera* review of the training Document confirms that it was presented by Ms. Lawrence, that, except for the first and two of the last three pages, each page is marked as confidential and that it contains sixty-three slides consisting of essentially pure legal advice regarding federal and state wage-hour laws, followed by three slides about how to exit the training and verify that it was viewed.  There is no business advice or recommendation regarding the classification of a specific Honeywell position.

The attorney-client privilege[3] protects confidential communications between attorney and client and is the oldest of the common law privileges; its purpose is to foster full and frank communication between lawyers and their clients.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  A highly valued safeguard, it enables clients better to conform conduct to the dictates of the law; yet because the privilege "stands as an obstacle of sorts to the search for truth," courts must take care to apply it only to the extent necessary to achieve its underlying goals.  In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16,

---

[2] At least in the excerpt presented to the Court, there is no instruction not to answer.  Rather, the privilege objection was asserted when Ms. Thorman was asked a preliminary question about the general subject matter; after colloquy, Plaintiffs shifted the focus of the questions to the foundation for the privilege claim.  ECF No. 75-2 at 5-7.  Nevertheless, with a record establishing clearly Plaintiffs' intent to seek access to the information and Defendants' assertion of the attorney-client privilege to protect it, the lack of an instruction is not fatal to Plaintiffs' ability to seek to compel further testimony if the privilege objection were overruled.

[3] Pursuant to Fed. R. Evid. 501, the federal common law of privilege is applicable to the extent that this case arises under FLSA, while Rhode Island privilege law is applicable to the Rhode Island state law wage claims.  In this case, the parties' briefs did not address privilege choice of law.  Rather, they relied on cases interpreting the scope of the attorney-client privilege that were decided under both federal and Rhode Island law (and somewhat illogically, also Massachusetts state law); neither Plaintiffs nor Defendants highlighted any material differences between federal and Rhode Island law.  The Court takes the same approach, assuming that both federal common law and Rhode Island state law apply, as well as that they are the same, at least for purposes of this motion.

22-23 (1st Cir. 2003). The party who invokes the privilege (here Honeywell) bears the burden of establishing that it applies to the communications at issue and that it has not been waived. Id. at 22. Both communications made by the client to the attorney for the purpose of seeking professional advice, as well as the attorney's responses, are privileged communications and are protected from disclosure. State v. von Bulow, 475 A.2d 995, 1004 (R.I. 1984). In the corporate setting, the privilege protects any communication where a corporate employee sought or acted upon legal advice concerning the duties of his or her employment. Waltz v. Exxon Mobil Corp., No. PC 02-2436, 2007 WL 324444 (R.I. Super. Jan. 11, 2007) (adopting broader "subject-matter test" established under federal law in Upjohn). The privilege does not protect an attorney's business advice. Id. (quoting United States v. Chevron Texaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2001)). However, training materials prepared by in-house counsel to advise employees on the law applicable to their jobs are entitled to protection because they provide legal advice. Valassis Comm'ns, Inc., v. News Corp., 17-cv-7378, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018); In re Currency Conversion Antitrust Litig., No. 05 Civ. 7116(WHP)(THK), 2010 WL 4365548, at *6 (S.D.N.Y. Nov. 3, 2010).

Even when reviewed with the "careful scrutiny" that courts deploy in determining whether an in-house attorney's communications are privileged, Research Inst. for Med. & Chemistry, Inc. v. Wisconsin Alumni Research Found., 114 F.R.D. 672, 676 (W.D. Wis. 1987), the training Document proffered for *in camera* review is plainly a protected attorney-client communication. Its content is pure legal advice, which was communicated to an employee who has testified that she was "seeking legal advice," ECF No. 75-2 at 7, related to her job, by an attorney who has averred that she was "providing legal advice." ECF No. 76-1 ¶ 4. The

Document is labeled as confidential and there is no evidence of waiver. No more need be said. The privilege objection is sustained.

      **Exemption Toolkit**. Also during her Fed. R. Civ. P. 30(b)(6) deposition, Ms. Thorman testified that she participated in a FLSA job classification review process for which she was trained by the legal department and that she conducted reviews of certain work functions with respect to FLSA classification for the purpose of legal analysis of the data against FLSA regulations and criteria. ECF No. 75-2 at 10-12. During the deposition, Defendants asserted the attorney-client privilege with respect to the "substance" of the reviews[4] and instructed Ms. Thorman not to answer questions about them. To buttress the privilege assertion, Defendants presented the Lawrence Declaration, which provides additional information. Attorney Lawrence avers that this process of review is called the "Exemption Toolkit," that it was developed by outside counsel with review and assistance from in-house counsel, that it involves the gathering of information deemed relevant by legal counsel and gathered at the direction of legal counsel, and that, after the information is gathered, it is reviewed by an attorney to provide legal advice about the proper classification of a position as exempt or non-exempt. ECF No. 76-1 ¶¶ 5-8.

      The remainder of the Documents submitted for *in camera* review relate to the "Exemption Toolkit." Consistent with Ms. Lawrence's averment that the forms filled in with the information requested by legal counsel are not retained after the review is completed, ECF No. 76-1 ¶ 8, no completed forms were included in the *in camera* review set. Relatedly, no document was proffered that amounts to a job description or an analysis or recommendation

---

[4] In this segment of the transcript submitted to the Court, Ms. Thorman was never instructed not to answer in that she testified that she could not recall if any review ever focused on the procurement function at Honeywell, that is, the positions in issue in this case. ECF No. 75-2 at 15-16. Nevertheless, the Court does not deem the matter moot, in that production of the Documents submitted for *in camera* review conceivably would have refreshed her recollection. Put differently, if the Documents were not clearly privileged, the Court would consider permitting the reopening of the deposition to inquire further despite the failure to ask a question that Ms. Thorman was instructed not to answer.

5

regarding the classification of any particular job at Honeywell, including that there is no reference at all to the classification of any Honeywell job in the procurement area. Rather, the submission consists of slide-deck presentations and instructions written by lawyers: (1) advising regarding the use of the "Exemption Toolkit" project, including its legal focus and methodology; and (2) advising the employees tasked with conducting the reviews regarding the legal underpinnings of the project and how appropriately to gather the information necessary for the attorney review. The focus of a substantial portion of these Documents is on pure legal advice regarding applicable law, both state and federal. Each item is labeled "Privileged and Confidential – Prepared at the Direction of Counsel for Purposes of Providing Legal Advice." Every page of each item is labeled either "confidential" or "Privileged and Confidential – Prepared at the Direction of Counsel for Purposes of Providing Legal Advice." Collectively these Documents clearly confirm the pervasive involvement of an outside law firm in the review project.

The *in camera* review establishes unambiguously that the proffered Documents related to the Exemption Toolkit are materials for which a corporation would choose to rely upon an attorney's advice and legal expertise regarding the applicable law and how attorneys and non-attorneys should communicate with other employees in gathering information related to the application of these laws. See In re Currency Conversion Antitrust Litig., 2010 WL 4365548, at *6. These Documents are very different from the materials examined in Mayale-Eke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CA 10-29 S, 2012 WL 13041527 (D.R.I. July 6, 2012), where the court overruled an attorney-client privilege objection to production of documents developed to train human resources employees to respond to work-related questions. Id. at *2. In Mayale-Eke, the court focused on the fact that the documents were created by non-attorney

human relations personnel and merely passed by an attorney for review; the court was "unpersuaded that simply because an attorney reviews a document (or electronic information) that such document (or information) thereby becomes protected by the attorney client privilege." Id.  Here, the Documents were prepared by attorneys to be communicated to Honeywell employees, including non-attorneys, for the purpose of giving and receiving legal advice.  If any of the attorneys involved in the project also communicated business advice, that is not reflected in any of the Documents proffered for *in camera* review.  Further, these Documents reflect the steps Honeywell took to protect the confidentiality of the privileged communications in them and there is no evidence of waiver.  Accordingly, the Court finds that Defendants have sustained their burden of establishing that these materials are protected by the attorney-client privilege.

## II.     Conclusion

Based on the *in camera* review of the Documents, the Court finds that they are protected by the attorney-client privilege and that Defendants' objection to producing them is sustained. Based on this determination, the Court further finds that there is no reason to require Defendants to provide further Fed. R. Civ. P. 30(b)(6) testimony regarding them.  Accordingly, Plaintiffs' Motion to Compel Further Testimony (ECF No. 75) is denied.

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 5, 2019